FILED

APR 04 2025

JUDGE ELAINE E. BUCKLO
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER SCOTT | No. 23 CR 97-2<br><br>Judge Elaine E. Bucklo |

# PLEA AGREEMENT

1. This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant CHRISTOPHER SCOTT, and his attorney, JOSHUA B. ADAMS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2. The indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts 5-10 and 13-15).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count Five, which charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count Five of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, constitute relevant conduct pursuant to Guideline § 1B1.3:

Beginning no later than on or about March 30, 2020, and continuing until at least March 10, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant CHRISTOPHER SCOTT, together with Individual A, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property, in connection with applications for Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") funds, by means of materially false and fraudulent pretenses, representations, and promises; and on or about June 10, 2020, for the purpose of executing the scheme, SCOTT knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an internet transmission of a PPP loan application on behalf of "EZ Link Golf LLC," to Bank A's

computer servers located outside of Illinois, in violation of Title 18, United States Code, Section 1343.

Specifically, SCOTT acknowledges that the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. SCOTT further acknowledges that one source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses and sole proprietorships for job retention and certain other expenses, through the PPP, which was implemented by the Small Business Administration ("SBA").

SCOTT knew that, to obtain a PPP loan, a business was required to submit and sign a PPP loan application, in which the applicant was required to certify that it had a business in operation on or before February 15, 2020, and that economic uncertainty at the time of the application made the loan request necessary to support the business's ongoing operations. SCOTT knew that businesses also had to provide, among other things, the number of individuals it employed and its average monthly payroll. SCOTT acknowledges that information about the PPP applicants' business employees and payroll was material to the lenders' approval, terms, and funding of PPP loans.

SCOTT further acknowledges that another source of relief provided by the CARES Act was the expansion of the EIDL program, which provided loan assistance

(including advances of up to $10,000) for businesses with, among other things, 500 or fewer employees and other eligible entities. SCOTT acknowledges the EIDL program was designed to provide economic relief to small businesses that were experiencing a temporary loss of revenue.

SCOTT knew that, to gain access to funds through the EIDL Program, small businesses applied through the SBA via an online portal and application. Defendant knew that the SBA required applicants to submit truthful information about the applying entity, its owner, and its condition prior to the COVID-19 pandemic, including the entity's number of employees as of January 31, 2020; the entity's gross revenues and cost of goods sold for the 12-month period prior to January 31, 2020; the entity's type of business; and the date on which the current owner assumed ownership of the entity. SCOTT understood that applicants who received EIDL proceeds were required to use those proceeds to pay an array of working capital and normal operating expenses, such as continuation of health care benefits, rent, utilities, and fixed debt payments. SCOTT acknowledges that information about the EIDL applicants' business expenses and employees, and how the EIDL would be used, was material to the SBA's approval, terms, and funding of EIDL loans and advances.

Between March 30, 2020, and March 10, 2021, SCOTT submitted four applications for loans and advances under the PPP and EIDL Programs to Bank A and Bank B, seeking funds for entities purportedly owned and operated by him and Individual A, including EZ Link Golf LLC ("EZ Link"), Naper Montessori Academy,

Inc. ("Naper"), and OLG Financing, Inc. ("OLG"). In these applications, SCOTT falsely and fraudulently represented each of the purported entities' number of employees, gross revenues, payroll, operating expenses, and existence as companies with ongoing operations.

For example, on or about June 10, 2020, SCOTT prepared, and submitted to Bank A via the internet, a PPP loan application on behalf of EZ Link. In this application, SCOTT falsely and fraudulently represented that he was EZ Link's sole owner and chairman and that the company (i) was an LLC that was located and conducted business in the Village of Hazel Crest, Illinois; (ii) employed 15 individuals; (iii) had monthly payroll expenses of $27,000; and (iv) was in operation on February 15, 2020. SCOTT knew at the time that he submitted this PPP application that EZ Link was not a legitimate business operation, did not employ 15 individuals, did not have monthly payroll expenses of $27,000, and was not in operation on February 15, 2020. SCOTT acknowledges that, in submitting this PPP application, he knowingly caused to be transmitted by means of wire communication, an internet transmission from Illinois to Bank A's computer servers located outside of Illinois.

As a result of his submission of this false and fraudulent application, on or about June 11, 2020, SCOTT caused Bank A to disburse a PPP loan of $67,500 for EZ Link into a Bank A account that SCOTT solely controlled in the name of "EZ Link Golf LLC." SCOTT knew at the time that neither he nor EZ Link—which was not a true business entity—were entitled to these PPP funds. SCOTT thereafter used these

funds for his and Individual A's personal use and benefit, and not to pay for the ordinary operating expenses and debts of the nonexistent EZ Link.

Additionally, on or about July 14, 2020, SCOTT prepared, and submitted to Bank A via the internet, an EIDL loan application on behalf of Naper. In this application, SCOTT falsely and fraudulently represented that he was Naper's manager and sole owner, and that the company (i) was an S-Corporation that was located and conducted business in Naperville, Illinois; (ii) employed 13 individuals; (iii) had gross revenues for the 12 months prior to the COVID-19 disaster of $307,000. SCOTT knew at the time that he submitted this application that Naper was not a legitimate business operation, did not employ 13 individuals, and did not have gross revenues for the 12 months prior to the COVID-19 disaster of $307,000. SCOTT acknowledges that, in submitting this EIDL application, he knowingly caused to be transmitted by means of wire communication, an internet transmission from Illinois to the SBA's computer servers located outside of Illinois.

As a result of his submission of this false and fraudulent application, on or about August 4, 2020, SCOTT caused the SBA to disburse an EIDL loan of $149,900 for Naper into a Bank A account that Individual A solely controlled in the name of "Naper Montessori Academy." SCOTT knew at the time that neither he nor Naper—which was not a true business entity—were entitled to these EIDL funds. SCOTT thereafter used these funds for his and Individual A's personal use and benefit, and not to pay for the ordinary operating expenses and debts of the nonexistent Naper.

Between March 30, 2020, and May 24, 2021, SCOTT, Individual A, or a combination of the two—as part of the scheme, and all with SCOTT's knowledge and approval—prepared and submitted to lenders and the SBA, additional false and fraudulent EIDL and PPP loans on behalf of several other nonexistent entities. In each of these applications, SCOTT or Individual A falsely and fraudulently misrepresented either the purported entities' number of employees, gross revenues, payroll, operating expenses, existence as companies with ongoing operations, or some combination thereof. As a result of these false and fraudulent submissions, and relying on the false and fraudulent representations and documents therein, SBA disbursed EDIL and PPP loan funds into bank accounts that Individual A controlled.

**Maximum Statutory Penalties**

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalty:

a. A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the government's position as of the date of this Agreement is as follows:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following

statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the 2024 Guidelines Manual.

b. **Offense Level Calculations.**

i. The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1).

ii. The offense level is increased 14 levels, pursuant to Guideline § 2B1.1(b)(1)(H), because the total loss amount for which defendant is accountable is approximately $1,485,600, which is more than $550,000, but less than $1,500,000.

iii. If the Court determines at the time of sentencing that defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate. The government reserves the right to take whatever position it deems appropriate at the time of sentencing with respect to whether defendant has accepted responsibility within the meaning of Guideline § 3E1.1(a).

iv. If the Court determines that defendant has fully accepted responsibility within the meaning of Guideline § 3E1.1(a), and that the offense level

is 16 or higher prior to the application of any reduction for acceptance of responsibility pursuant to § 3E1.1(a), the government will move for an additional one-level reduction in the offense level pursuant to Guideline § 3E1.1(b) because defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 13 and defendant's criminal history category is VI:

i. On or about May 13, 2002, defendant was convicted of Aggravated Unlawful Use of a Weapon in the Circuit Court of Cook County, Illinois, and sentenced to two concurrent sentences of one year of probation. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for these sentences.

ii. On or about August 31, 2004, defendant was convicted of Access Device Fraud in the United States District Court for the Northern District of Illinois and sentenced to 18 months' imprisonment and a period of supervised release. On or about March 28, 2007, defendant's supervised release was revoked and he was sentenced to 18 months of incarceration. Pursuant to Guidelines §§ 4A1.1(a) and 4A1.2(k), defendant receives three criminal history points for this sentence.

iii. On or about January 16, 2007, defendant was convicted of Battery, Aggravated Assault, and traffic violations in the Circuit Court of Cook County, Illinois, and sentenced to six months' imprisonment. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

iv. On or about November 30, 2007, defendant was convicted of Driving Under the Influence in the Circuit Court of Cook County, Illinois, and sentenced to six months' imprisonment. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

v. On or about October 27, 2008, defendant was convicted of Bank Fraud in the United States District Court for the Northern District of Illinois and sentenced to 35 months' imprisonment. On or about April 17, 2013, defendant's supervised release was revoked and he was sentenced to 24 months' imprisonment. Pursuant to Guideline §§ 4A1.1(a) and 4A1.2(k), defendant receives three criminal history points for these sentences.

vi. On or about April 22, 2013, defendant was convicted of identity theft in the Circuit Court of DuPage County, Illinois, and sentenced to three years' imprisonment in case no. 2012 CF 001107. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

vii. On or about July 8, 2013, defendant was convicted of Aggravated DUI – Third Violation in the Circuit Court of DuPage County, Illinois, and sentenced to three years' imprisonment in case no. 2013 CF 000624. Pursuant to

Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

viii. On or about March 15, 2022, defendant was convicted of Driving on a Revoked/Suspended License – 4th-9th Offense in the Circuit Court of Cook County, Illinois, and sentenced to two years' probation. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this sentence.

d. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The

parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

**Agreements Relating to Sentencing**

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution to victims in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

14. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the

United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), and Title 31, United States Code, Sections 3711, 3716, and 3728, notwithstanding any payment schedule set by the Court.

17. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment, as well as the forfeiture allegation as to defendant.

**Forfeiture**

18. Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense; and any property used or intended to be used, in any manner or part, to commit or facilitate commission of the offense.

19. Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried

out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel. Defendant further agrees not to challenge or seek review of the civil or administrative forfeiture of any property identified in this agreement subject to forfeiture, and will not assist any third party with regard to such challenge or review.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

20. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 23 CR 97-2.

21. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

22. Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately.

The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed.

Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

23. Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

24. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

25. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of

justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

26. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

27. Defendant agrees to cooperate with the United States Attorney's Office in collecting any ordered fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

29. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

30. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

32. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

33. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 4/4/25

ANDREW ERSKINE Digitally signed by ANDREW ERSKINE Date: 2025.04.03 14:41:32 -05'00'

ANDREW C. ERSKINE, on behalf of
MORRIS PASQUAL
Acting United States Attorney

ALEJANDRO G. ORTEGA
Assistant U.S. Attorney

CHRISTOPHER SCOTT
Defendant

JOSHUA B. ADAMS
Attorney for Defendant