IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 23 CR 97 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | Chicago, Illinois |
| CHRISTOPHER SCOTT, | ) | August 20, 2025 |
| | ) | 10:16 a.m. |
| Defendant. | ) | |

TRANSCRIPT OF PROCEEDINGS - SENTENCING
BEFORE THE HONORABLE ELAINE E. BUCKLO

APPEARANCES:

| | |
|---|---|
| For the Government: | HONORABLE ANDREW S. BOUTROS<br>UNITED STATES ATTORNEY<br>BY: MR. ALEJANDRO G. ORTEGA<br>219 South Dearborn Street, Suite 500<br>Chicago, Illinois 60604 |
| For the Defendant: | LAW OFFICE OF JOSHUA B. ADAMS, PC<br>BY: 900 W. Jackson Boulevard, Suite 7E<br>Chicago, Illinois 60607 |
| Also Present: | OFFICER JASON CHRISTIANSEN, U.S. Probation |
| Court Reporter: | SANDRA M. TENNIS, CSR, RMR, FCRR<br>Official Court Reporter<br>219 South Dearborn Street, Room 2260<br>Chicago, Illinois 60604<br>Telephone: (312) 554-8244<br>sandra_tennis@ilnd.uscourts.gov |

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

THE CLERK: Calling 23 CR 97-2, USA versus Christopher Scott.

MR. ORTEGA: Good morning, your Honor. On behalf of the United States, Alejandro Ortega, Judge.

THE COURT: Good morning.

MR. ADAMS: Good morning, your Honor. Joshua Adams for Christopher Scott, who is present and to my right.

THE DEFENDANT: Good morning, your Honor. Christopher Scott.

THE COURT: Good morning.

OFFICER CHRISTIANSEN: United States Probation Officer Jason Christiansen. Good morning, Judge.

THE COURT: Good morning.

All right. I guess the first thing we have to deal with is Mr. Scott's motion to continue this hearing.

MR. ADAMS: Your Honor, I spoke with Mr. Scott on Monday, we discussed the issues, and we're ready to proceed with sentencing, and he's -- and we'll withdraw that motion.

THE COURT: Thank you.

Okay. There were -- also filed by him, I think, were a couple of objections.

MR. ADAMS: Yes, your Honor. Judge, we're going to -- I'm going to rely on the memo that counsel filed. I would withdraw his pro se filings. I've raised the objections that I

thought were legally relevant in this case.

THE COURT: Maybe I'm looking at the -- thinking of the wrong one. Give me just a minute.

Okay. The issue -- agree, I have to deny your objection to the loss amount calculation. It's contrary to Seventh Circuit --

MR. ADAMS: Yes, your Honor.

THE COURT: -- precedent. I do agree, though, about the enhancement for acting on behalf of an educational organization. Not because I do or don't think it has -- that it might have -- be correct on the merits, but this is one -- that's what a plea agreement is. I mean, when -- when you say that there are unknown -- you know, I understand that they can be changed for unknown things, but this wasn't an unknown. And so it seems to me that was the agreement. So I'm not going to give that two-level enhancement.

How does that change things, so I get it down here. So does that make it instead of -- it doesn't change, I assume, the history -- well, it wouldn't change his history category. Does it make it a 20?

MR. ADAMS: Yes, your Honor.

THE COURT: And what does that mean the guidelines are? Probably something to 84.

MR. ADAMS: 70 to 87 months, your Honor.

MR. ORTEGA: Yeah.

THE COURT: Okay. All right. I think that takes care of all objections. Am I correct?

MR. ADAMS: Yes, your Honor.

MR. ORTEGA: Yes, your Honor.

THE COURT: All right. Then I'll listen to the government. I've read everything that's been submitted.

MR. ORTEGA: Thank you, your Honor. Your Honor, the government takes these -- these COVID fraud cases very seriously for reasons I outlined in my position paper. This was a time when a global pandemic caused manifold economic harm to millions of people across the world, including Americans who were entitled to this emergency relief that was administered by the SBA.

THE COURT: I have to make one correction.

MR. ORTEGA: I'm sorry.

THE COURT: You said that this fraud started in March 2020, or maybe before. They didn't pass the PPP Act until sometime near the end of March of 2020.

MR. ORTEGA: Correct, your Honor. And as I mentioned in my position paper, Mr. Scott applied for 20 EIDL loans and seven PPP loans during the course of the scheme with an intended loss of nearly $2 million for entities that either did not exist at all or perhaps did exist at some point in time but were not in operation at the time of the material misstatements on the applications.

In addition, your Honor, I outlined in my position paper facts that I believe are aggravating. Namely, the evidence in this case that -- that Mr. Scott stole checks to perpetuate the fraudulent scheme from what all -- all indications are innocent company. And that he attempted to intimidate the secret service officer who was investigating this case.

THE COURT: I read that part. I don't -- at least from reading it, I didn't really understand that. Anyway, I'm not going to take that into account.

MR. ORTEGA: And your Honor -- your Honor already ruled on the PSR objections, so it's the government's position that the loss amount is obviously the intended loss amount.

And so, you know, the last thing I'll just mention in terms of 3553(a) factors is the defendant's history and characteristics. The highest criminal history category, the history of wire fraud cases, and even violent -- convictions for violent crime cases.

So, your Honor, based on the guidelines, which are driven by the loss amounts and the criminal history category, based on your Honor's calculations, the guidelines are 70 to 87 months. My position paper asks for 96 months. It's not my position to go outside the guidelines. So, your Honor, given that allocution in my position paper, I would just seek a guideline sentence, whatever your Honor believes is fair in

this case.

THE COURT: Thank you. Go ahead.

MR. ADAMS: Thank you, your Honor.

Judge, I think the biggest issue in this case for Mr. Scott is deterrence. This is his third case in this building. And I think he has shown a willingness to stop this kind of activity. He met with the government I believe twice, or even -- I think it was three times. He provided them with information. He was honest and forthcoming with them. Didn't lead to any new cases or new charges or uncover new frauds, but it shows a willingness, which I think was not present in previous cases, to turn a new leaf and not continue this life of committing fraud.

And I want to address one thing the government said about his violent history. Paragraph 52 of the PSR has a -- shows an aggravated unlawful use of a weapon. He was 21 years old then. That was in the year 2000. And then in 2020 -- in 2002, another aggravated unlawful use of a weapon. He was 22 years old. That's -- you know, we're going on 23 and 25 years ago. I think he's left that kind of life.

I know he's trying to, you know, provide for his family, trying to provide for his children. And he is remorseful for the conduct in this case. But I think his conduct -- his post-arrest conduct shows a willingness to lead a law-abiding and healthy life and not continue to recidivate

and pose a risk to the government and pose a risk to society as a whole by perpetuating these frauds.

So, Judge, we ask for a sentence of 24 months in custody. And I think that takes into account not only Mr. Scott's conduct but similarly situated defendants all over the country who are getting -- who are being convicted and sentenced on these PPP cases.

THE COURT: It's hard to know which ones are similarly situated. Here, we have a Criminal History Category of VI, including -- which is unusual -- two prior cases in this building involving fraud.

Anything more you want to say?

MR. ADAMS: I just wanted to just repeat, Judge, that in the previous two cases he didn't show a willingness to assist the government uncovering new or unknown conduct, and he did that here. So I think that should weigh in favor, respectfully, of a sentence below the guidelines.

Thank you, Judge.

THE COURT: Would you like to speak?

THE DEFENDANT: Yes, ma'am, your Honor. Well, like the government said, I've been here twice before. And I was young, trying to find myself at that time. Did I do fraud before? I did. Because I was scared to be a drug dealer. I was still trying to find myself. I had a gun, yes, I did, but guess what? I had a FOID card. So I was driving, and that's

why -- that's how I got that conviction because the lawyer was just, like, hurry up --

THE COURT: I'm not concerned about the gun.

THE DEFENDANT: Right. So I did mess up. But I'm -- but I've been out 20 -- 20 some years doing right. I'm on the Belle Collective on the Oprah Winfrey Network, and I wrote several books. Every -- every award that I've gotten since I've been home has been taken back from me. Every group or club association has kicked me out because of this right here. Even my church scrubbed my name off a plaque. So all of this is humiliating, not only to me but to my family.

My mom is sick. They just -- they just diagnosed her with dementia. I've been talking to advocacy groups on people that's incarcerated and their parents die. My son, I'm raising him. I don't want to raise another child behind bars. I brought all this upon myself, understand. So even my wife, she's guilty by association by being married to me. My wife ain't did nothing wrong. I'm ten toes telling you, she never did nothing wrong. Though, I did do wrong, as opposed to putting two employees, I probably put 10 or 15. I did that, your Honor. And I'm -- and I'm gratefully remorseful because guess what, I've lost more than what I've gotten. I've lost more than what I receive.

So I'm standing in front of you right now, today, to ask you to have leniency on me. Yes, Chris, you've been here

before. I have. But God -- my God that I serve is a God of second and third chances. And that's -- and that's -- and that's what I'm here to ask you.

Yes, I filed motions because -- and no offense to my -- my attorney because he -- he wasn't calling back, or he had other cases. I done that. So guess what? I looked into my case myself because I never received a -- a discovery. I never received a grand jury transcript. I'm just telling you right now, your Honor, I filed those motions because I don't know what else to do. I'm -- I'm -- everything I had I lost. I had a 800 credit score, your Honor. My credit core score is a 400. Everything because of this. And, yes, I did wrong. I'm not deterring from that.

All I'm asking you is to be like the God that I serve and ask for another chance to do right by everyone around me. My church, my family, my kids, my mom. Even society.

And that's what I have to say, your Honor.

MR. ADAMS: Your Honor, may I make one -- make the record?

THE COURT: Yes.

MR. ADAMS: Judge, Mr. Scott has come to my office three times during the -- before he pled guilty, and we've reviewed the discovery in this case multiple times together.

THE COURT: I have no reason to think that we need to re-visit any -- the plea of guilty.

MR. ADAMS: Thank you, Judge.

THE COURT: And I haven't been asked to.

Okay. Let's turn to 3553. The nature and circumstances of the offense. I mean, the fraud on all who were affected directly by it, as well as indirectly, is -- was incredibly substantial. This wasn't like one time. I mean, this was multiple -- multiple times, with a huge actual loss.

And your history and characteristics is -- as I said, this is -- it has been repeated action. I mean, in some of these, as much as I think that fraud is a really serious crime and that fraud, under these circumstances, when everybody was in literally dire jeopardy in all kinds of ways and there were an awful lot of people that engaged in fraud, I probably taken that into -- or might take that into consideration in certain cases. But your history is just of not learning. Before I guess I -- I have to doubt that. I don't know what's happening -- happened with your current state case, but I do notice that the arrest report said you had a driver's license, or something, in a different name. But -- and by the time you did this one, you weren't a young man. You knew -- you knew what the consequences would be. You knew it was -- you hopefully had learned from the identity theft in 2012, or the -- there's a lot of aggravated -- bank fraud when you were 28. I mean, you weren't a child when you did those.

So I really think this history counts largely against

you. I understand that you cooperated or tried to cooperate with the government in this case, and that you have pled guilty. And I'm sympathetic about the situation with your mother, and I think you had said your son as well.

But I also need the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes by you, and then to impose a sentence that's sufficient but not greater than necessary.

In this case, taking all of that into consideration, I am going to impose a sentence of 70 months in the custody of the Bureau of Prisons. I will not impose a fine. Oh, but it's to be followed by three years of supervised release.

Restitution, at least according to the sentencing recommendation from probation, is $567,333. There's also a $100 special assessment that I must impose. And I'll note that I think I remember reading that there's a prior restitution that has not been paid. Am I correct in that?

MR. ORTEGA: Yes, your Honor. I do believe that there are some outstanding debts that Mr. Scott owes that are detailed --

THE COURT: 100 and some thousand dollars, or something?

MR. ORTEGA: -- in the PSR. Right, that was in the

PSR, Judge. I would defer to Mr. Christiansen, Officer Christiansen. But I do -- I do recall reading there were some outstanding debts that were described in the PSR.

OFFICER CHRISTIANSEN: Judge, yes, during the presentence investigation I referenced some -- a database that basically keeps track of restitution obligations or criminal financial penalties. And what's reflected in the presentence report is what is reflected in there.

THE COURT: All right. Well, whether it's accurate or not isn't really -- isn't going into the sentence that I'm imposing, but I just note that.

I think that's -- oh, wait a minute, the conditions of supervised release. There are numerous ones stated. Do you wish to waive reading of them, and do you agree to them?

MR. ADAMS: Judge, we'll waive reading, and we agree. I've reviewed these with Mr. Scott.

THE COURT: Okay. And is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. Have I missed anything?

MR. ADAMS: Your Honor, I would just ask that the restitution be joint and severable, should the co-defendant be found guilty.

THE COURT: If the co-defendant is found guilty, I -- it will be joint and several.

MR. ADAMS: Thank you, Judge.

THE COURT: Or up to the -- I mean, I -- I guess I can't completely say that because I don't know what the amount might be.

MR. ADAMS: Okay.

THE COURT: To the extent that they would be the same, then they would be.

MR. ADAMS: Thank you, Judge.

THE COURT: So I can't in this judgment order say --

MR. ADAMS: Right.

THE COURT: -- that it's joint and several. But I would, if there is a judgment order in the other, to the extent that it is, I will.

MR. ORTEGA: I believe, your Honor, there was a --

THE COURT: That one we don't even have a trial date.

MR. ORTEGA: No, your Honor. Correct.

THE COURT: All right. Well, I assume we have a status pretty soon.

MR. ORTEGA: That's correct, Judge.

THE COURT: All right. Well, then, you'll tell me what we're doing at that point, all of you will that are involved.

OFFICER CHRISTIANSEN: Your Honor, could I be --

THE COURT: You have 14 days to file a notice of appeal. We need a date to report.

THE CLERK: September 26th.

OFFICER CHRISTIANSEN: Could I make one request, Judge?

THE COURT: Yes.

OFFICER CHRISTIANSEN: I referenced it in the report. We don't have a victim import spreadsheet from the government detailing the information that's required for collection and ultimate disbursement of the restitution. So I would just ask that the U.S. Attorney's Office submit that to us.

THE COURT: Yes. Please provide that within the next 14 days. Okay?

MR. ORTEGA: Yes, your Honor.

THE COURT: I know you're busy, but we need that. Okay. Thank you.

MR. ADAMS: Your Honor, Mr. Scott is requesting a later surrender date. If we could get the first of the year, if that's possible.

THE COURT: No. Quite frankly, I'm concerned about him committing additional fraud.

MR. ORTEGA: A few more things, Judge, just before we break. I believe we filed a motion for forfeiture. Can -- would the Court be able to just orally announce the forfeiture judgment -- forfeiture order?

THE COURT: Okay. Any objection?

MR. ADAMS: No objection, your Honor.

THE COURT: All right. It's granted.

MR. ORTEGA: And then finally we move to dismiss Counts 4 through 10 and 13 through 15.

THE COURT: All right. Okay.

MR. ORTEGA: Thank you, Judge.

THE COURT: Thank you.

MR. ADAMS: Thank you, your Honor.

(Proceedings concluded at 10:37 a.m.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Sandra M. Tennis*
Sandra M. Tennis
Official Court Reporter

*August 25, 2025*
Date