IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 23 CR 97 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CHRISTOPHER SCOTT, | ) | Chicago, Illinois |
| | ) | April 4, 2025 |
| Defendant. | ) | 10:11 a.m. |

# TRANSCRIPT OF PROCEEDINGS - CHANGE OF PLEA
BEFORE THE HONORABLE ELAINE E. BUCKLO

APPEARANCES:

For the Government: HONORABLE ANDREW S. BOUTROS
UNITED STATES ATTORNEY
BY: MS. MICHELLE PARTHUM
219 South Dearborn Street, Suite 500
Chicago, Illinois 60604

For the Defendant: LAW OFFICE OF JOSHUA B. ADAMS, PC
BY: 900 W. Jackson Boulevard, Suite 7E
Chicago, Illinois 60607

Court Reporter: SANDRA M. TENNIS, CSR, RMR, FCRR
Official Court Reporter
219 South Dearborn Street, Room 2260
Chicago, Illinois 60604
Telephone: (312) 554-8244
sandra_tennis@ilnd.uscourts.gov

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

THE CLERK: Calling 23 CR 97-2, USA versus Christopher Scott.

MS. PARTHUM: Good morning, your Honor. Michelle Parthum for the United States.

THE COURT: Good morning.

MR. ADAMS: Good morning, your Honor. Joshua Adams for Mr. Scott, who's present to my right.

THE COURT: Good morning.

THE DEFENDANT: Good morning, your Honor. Christopher Scott for the record.

THE COURT: Good morning.

All right. We're here for a change of plea?

MR. ADAMS: Yes, your Honor. We're ready.

THE COURT: It's my understanding that you wish to offer a plea of guilty today. Now, before I can accept your plea, I must determine that you are mentally competent to plead at this time, that you have had the assistance of a lawyer, that you understand your trial rights, that you understand the charges against you, that your plea is voluntary, and that there is a basis in fact for your plea.

I must put you under oath and ask you questions. I want you to understand you may talk to your lawyer at any time. If you give false answers to any of my questions, you could be charged with a new and separate crime. In giving truthful

answers to some of my questions, you will be giving up your right not to testify against yourself, some of your answers will be incriminating, and you will have to admit your guilt.

Do you understand what I've told you?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Then please swear the defendant.

THE CLERK: Mr. Scott, please raise your right hand.

(Defendant sworn.)

THE COURT: Would you state your name for the record, please.

THE DEFENDANT: Christopher James Scott.

THE COURT: How old are you, Mr. Scott?

THE DEFENDANT: 45. I'll be 46 next month.

THE COURT: What city or town do you live?

THE DEFENDANT: Palos Park, Illinois.

THE COURT: Are you married?

THE DEFENDANT: Married with seven kids.

THE COURT: How far did you go in school?

THE DEFENDANT: My last year at Columbia College, I got 15 more credit hours before I graduate.

THE COURT: What kind of work have you done in the last three years?

THE DEFENDANT: Construction, banking, and financial.

THE COURT: Are you basically in good physical health?

THE DEFENDANT: Very good. I was shot -- I got shot before we came in in this case. So I was shot up, initially.

MR. ADAMS: Not recently.

THE DEFENDANT: Not recently. But when I first got the case, I had got shot up.

THE COURT: Well, today are you in good shape?

THE DEFENDANT: No, no, I'm good. Yeah, yeah. Yes, ma'am.

THE COURT: Okay. Good. Have you taken any medication or drugs of any kind or alcoholic beverages within the last 24 hours?

THE DEFENDANT: No, ma'am.

THE COURT: Have you ever been under the care of a doctor or in a hospital for a mental condition?

THE DEFENDANT: No, ma'am.

THE COURT: Counsel, do either of you have any doubt as to Mr. Scott's competence to plead at this time?

THE GOVERNMENT: Not from the government.

MR. ADAMS: No, your Honor.

THE COURT: I find that you are competent to offer a plea of guilty. Tell me the name of the attorney who's representing you in this case.

THE DEFENDANT: Attorney Josh Adams.

THE COURT: Have you had enough time to talk to your attorney?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you told your attorney everything you know about your case?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you satisfied with the advice and efforts of your attorney?

THE DEFENDANT: Yes, ma'am.

THE COURT: You are charged in this case with wire fraud. Have you read the charges in the indictment?

THE DEFENDANT: Yes, ma'am. Several times.

THE COURT: Okay. And have you discussed them with your attorney?

THE DEFENDANT: Yes, ma'am, I did.

THE COURT: Do you understand the charges?

THE DEFENDANT: Yes, ma'am, I do.

THE COURT: Under the constitution and laws of the United States, you are entitled to trial by jury on the charges against you. Do you understand this?

THE DEFENDANT: Yes, ma'am, I do.

THE COURT: Mr. Adams, are you retained or appointed?

MR. ADAMS: I'm retained on this case, your Honor.

THE COURT: You have retained counsel to assist you today. If you chose to plead not guilty, you would have the right to the assistance of counsel at trial as well. If you chose to plead not guilty and you no longer had the funds to

hire a lawyer, I would appoint a lawyer to serve as your counsel at trial at no cost to you, if you could afford no cost. Do you understand this?

THE DEFENDANT: Yes, ma'am, I do.

THE COURT: Do you understand that you have a right to plead not guilty?

THE DEFENDANT: Yes, ma'am.

THE COURT: If you plead not guilty, you have a right to a speedy trial, to see and hear all the witnesses called to testify against you. Your lawyer would have a right to cross-examine witnesses, and you could use the subpoena of the Court to obtain attendance of witnesses to testify on your behalf. Do you understand this?

THE DEFENDANT: Yes, ma'am, I do.

THE COURT: At trial, you'd be presumed to be innocent, and the government would be required to prove you guilty by competent evidence beyond a reasonable doubt before you could be found guilty. You would not have to prove you were innocent. Do you understand this?

THE DEFENDANT: Yes, ma'am, I do.

THE COURT: At trial, you would have the right to testify, if you wanted to. You would also have the right not to testify. If you chose not to testify, no inference or suggestion of guilt could be drawn from the fact that you did not testify. Do you understand this?

THE DEFENDANT: Yes, ma'am, I do.

THE COURT: The trial could be either a jury trial or a trial by a judge without a jury. A trial by a judge would occur only if you, the government, and I all agreed. Do you understand this?

THE DEFENDANT: Yes, ma'am, I do.

THE COURT: If the trial were a jury trial, the jury would be composed of 12 persons selected from a large group. You and your attorney would have an opportunity to exclude jurors if they were biased against you or disqualified. You would be able to exclude a certain number of jurors simply because you did not want them to be on your jury. Do you understand this?

THE DEFENDANT: Yes, ma'am, I do.

THE COURT: Is there more than one count to this indictment?

MS. PARTHUM: There is.

THE COURT: If you had a jury trial, a jury would have to agree unanimously and would have to consider each count of the indictment separately. Do you understand that?

THE DEFENDANT: Yes, ma'am, I do.

THE COURT: Do you understand that if at a trial you are found guilty, you would have a right to appeal?

THE DEFENDANT: Yes, ma'am, I understand.

THE COURT: Do you understand that if you plead

guilty, you waive, that is, you give up all of these trial rights?

THE DEFENDANT: Yes, ma'am, I do.

THE COURT: If you plead guilty and I accept your plea, there will be no trial, and I will enter a finding of guilty on the basis of your plea and sentence you after a sentencing hearing. Do you understand that?

THE DEFENDANT: Yes, ma'am, I do.

THE COURT: We do have a written plea agreement. Are there any agreements or promises that have been made that are not in the plea agreement?

THE DEFENDANT: No, ma'am.

THE COURT: Is this your signature on this plea agreement?

THE DEFENDANT: Yes, ma'am. I just signed it.

THE COURT: And have you read that agreement?

THE DEFENDANT: Yes, ma'am, I did.

THE COURT: Have you discussed it with your attorney?

THE DEFENDANT: Yes, ma'am, we did.

THE COURT: Now, which charge is he pleading guilty to?

MS. PARTHUM: Count Five, your Honor. That's on page 2, paragraph 5, at the top.

THE COURT: Okay. Count Five carries a statutory penalty of a maximum sentence of 20 years imprisonment, a

maximum fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greater, and a term of supervised release of not more than three years. I must order restitution to the victims of the offense in an amount to be determined by me, and there's a $100 special assessment that I must impose. Do you understand all of that?

THE DEFENDANT: Yes, ma'am, I do.

THE COURT: Has anyone forced you in any way to plead guilty?

THE DEFENDANT: No, ma'am.

THE COURT: Has anyone threatened or coerced you to cause you to plead guilty?

THE DEFENDANT: No, ma'am.

THE COURT: Have any promises been made to cause you to plead guilty?

THE DEFENDANT: No, ma'am.

THE COURT: Is your decision to plead guilty entirely voluntary?

THE DEFENDANT: Yes, ma'am, all mine.

THE COURT: Do you understand that I have the final decision as to what your sentence will be?

THE DEFENDANT: Yes, ma'am, I do.

THE COURT: All right. Will the government please summarize what its evidence would be with respect to Count Five, if this case were tried.

MS. PARTHUM: Yes, your Honor. If this case were to proceed to trial, the government anticipates its evidence would show that:

Beginning no later than on or about March 30th of 2020, and continuing until at least March 10th of 2021, in Chicago, and elsewhere, the defendant, together with Individual A, knowingly devised, intended to devise, and participated in a scheme to defraud and to obtain money and property in connection with applications for the Paycheck Protection Program and Economic Injury Disaster Loan funds by means of materially false and fraudulent pretenses, representations, and promises; and on or about June 10, 2020, for the purpose of executing the scheme, the defendant knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an internet transmission of a PPP loan application on behalf of "EZ Link Golf, LLC, to Bank A's computer servers located outside of Illinois.

I'm going to turn to the bottom of page 4 now in the agreement.

More specifically, between March 30th of 2020, and March 10th of 2021, the defendant submitted four applications for loans and advances under the PPP and EIDL programs to Bank A and Bank B, seeking funds for entities purportedly owned and operated by him and Individual A, including EZ Link Golf,

LLC, Naper Montessori Academy, Inc., and OLG Financing, Inc.

In these applications, the defendant falsely and fraudulently represented each of the purported entities' number of employees, gross revenues, payroll, operating expenses, and existence as companies with ongoing operations.

For example, on or about June 10, 2020, the defendant prepared, and submitted to Bank A via the internet, a PPP loan application on behalf of EZ Link. In this application, the defendant falsely and fraudulently represented that he was EZ Link's sole owner and chairman, and that the company was an LLC that was located and conducted business in the Village of Hazel Crest, Illinois, employed 15 individuals, had monthly payroll expenses of $27,000, and was in operation on February 15, 2020. The defendant knew at the time that he submitted this PPP application that EZ Link was not a legitimate business operation, did not employ 15 individuals, did not have monthly payroll expenses of $27,000, and was not in operation on February 15, 2020. The defendant acknowledges that, in submitting this PPP application, he knowingly caused to be transmitted by means of wire communication an internet transmission from Illinois to Bank A's computer servers located outside of Illinois.

As a result of his submission of this false and fraudulent application, on or about June 11, 2020, the defendant caused Bank A to disburse a PPP loan of $67,500 for

EZ Link into a Bank A account that defendant solely controlled in the name of EZ Link Golf, LLC. The defendant knew at the time that neither he nor EZ Link, which was not a true business entity, were entitled to these PPP funds. The defendant thereafter used these funds for his and Individual A's personal use and benefit, and to not to pay for the ordinary operating expenses and debts of the non-existent EZ Link.

Additionally, on or about July 14, 2020, the defendant prepared and submitted to Bank A, via the internet, an EIDL loan application on behalf of Naper. In this application, the defendant falsely and fraudulently represented that he was Naper's manager and sole owner, and that the company was an S-Corporation that was located and conducted business in Naperville, Illinois, employed 13 individuals, had gross revenues for the 12 months prior to the COVID-19 disaster of $307,000. Defendant knew at the time that he submitted this application that Naper was not a legitimate business operation, did not employ 13 individuals, and did not have gross revenues for the 12 months prior to the COVID-19 disaster of $307,000. The defendant acknowledges that, in submitting this EIDL application, he knowingly caused to be transmitted by means of wire communication an internet transmission from Illinois to the SBA's computer servers located outside of Illinois.

As a result of his submission of this false and fraudulent application, on or about August 4, 2020, the

defendant caused the SBA to disburse an EIDL loan of $149,900 from -- for Naper into a Bank A account that Individual A solely controlled in the name of Naper Montessori Academy. The defendant knew at the time that neither he nor Naper, which was not a true business entity, were entitled to these EIDL funds. The defendant thereafter used these funds for his and Individual A's personal use and benefit and not to pay for the ordinary operating expenses and debts of the non-existent Naper.

Between March 30, 2020, and May 24, 2021, the defendant, Individual A, or a combination of the two, as part of the scheme, and all with defendant's knowledge and approval, prepared and submitted to lenders and to the SBA additional false and fraudulent EIDL and PPP loans on behalf of several other non-existent entities. In each of these applications, the defendant, or Individual A, falsely and fraudulently misrepresented either the purported entities' number of employees, gross revenues, payroll, operating expenses, existence as companies with ongoing operations, or some combination thereof. As a result of these false and fraudulent submissions and relying on the false and fraudulent representations and documents therein, SBA disbursed EDIL and PPP loan funds into bank accounts that Individual A controlled.

THE COURT: Have you heard the statement of the Assistant United States Attorney?

THE DEFENDANT: Yes, ma'am, very loud and clear.

THE COURT: Is it true?

THE DEFENDANT: Yes, ma'am.

THE COURT: Did you fraudulently -- or did you submit false loan applications to get PPP and -- what is it -- EDIL funds?

THE DEFENDANT: Yes, ma'am, I did.

THE COURT: What is your plea to Count Five of the indictment?

THE DEFENDANT: My plea is guilty.

THE COURT: Since you acknowledge that you are, in fact, guilty as charged in Count Five of the indictment and you have had the assistance of counsel, and you know your right to a trial and the maximum possible punishment, and you are voluntarily pleading guilty, I will accept your plea of guilty and enter a judgment of guilty on your plea.

I'll order a presentence investigation. Your lawyer will explain that procedure to you.

Do you want to give them some dates?

THE CLERK: Yes, Judge. Sentencing hearing is set for July 9, 2025, at 10:30 a.m. Sentencing memorandum and objections to PSR to be filed by June 25th. Responses to be filed by July 2nd.

THE COURT: Okay. Thank you.

MR. ADAMS: Thank you, Judge.

MS. PARTHUM: Thank you, your Honor.

(Proceedings concluded at 10:25 a.m.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Sandra M. Tennis* *November 3, 2025*

Sandra M. Tennis Date

Official Court Reporter